UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNIVERSAL UNDERWRITERS INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CASE NO. 1:06-cv-1411-DFH-TAB |
| TUTWILER CADILLAC, INC., HELEN RICHARDSON, JOE BYERS, and JUANITA BYERS, ) ) ) ) ) | |
| Defendants. ) | |

ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Universal Underwriters Insurance Company seeks a declaratory judgment that its liability insurance policy for defendant Tutwiler Cadillac, Inc. does not cover claims asserted by defendants Joe and Juanita Byers. The Byers' claims arise from a 2004 accident allegedly caused by defendant Helen Richardson, who was driving a vehicle owned by Tutwiler. Universal Underwriters has moved for summary judgment, arguing that the undisputed facts establish that Mrs. Richardson was not an "insured" under the Tutwiler policy because she did not have permission from Tutwiler to drive the Tutwiler vehicle.

Summary judgment is a useful procedural tool when the material facts are undisputed, see, *e.g.*, *Huntzinger v. Hastings Mutual Ins. Co.*, 143 F.3d 302, 306-07 (7th Cir. 1998) (affirming summary judgment finding no coverage), but that is not

the case here.  Plaintiff's motion for summary judgment must be denied for the reasons explained below.  In short, there are genuine factual disputes as to whether Mrs. Richardson had permission from Tutwiler to drive the vehicle, and thus as to whether she was insured under the policy.  The facts stated in this entry are either undisputed or reflect conflicting evidence in the light most favorable to defendants, as the non-moving parties.

Universal Underwriters issued a liability insurance policy to Tutwiler Cadillac, Inc., an automobile dealer on the north side of Indianapolis.  The policy provided that the applicable liability coverage ("auto hazard") applied to:

> Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use.  The actual use of the AUTO must be by YOU or within the scope of YOUR permission. . . .

Policy, Part 500 at 42.

The vehicle in this case, a Cadillac Escalade, was owned by Tutwiler and was being used by Wallace Richardson as a "demonstrator."  Wallace Richardson is defendant Helen Richardson's husband.  In 2004, he was employed as the business manager for Tutwiler.  In approximately 1993, when he started working for Tutwiler, Wallace Richardson signed a "Demonstrator Agreement" that applied to any vehicles owned by the dealership.  See Wallace Richardson Dep. 6-7.  That agreement included the following language:

> Further, I agree that my Demonstrator or any other Dealership owned car will never be given to anyone (ie: customer, friend, etc.) without the knowledge of my Sales Manager. It is my responsibility to be sure the Sales Manager then has the proper loaner agreement form signed by the prospective driver. The purpose of this policy is to be sure the other party has their insurance coverage on the Dealership automobile while they have the car.

Chambers Dep. Ex. 1 (undated document stating effective July 1, 1987).

On the morning of March 8, 2004, Wallace and Helen Richardson each drove a vehicle to the Tutwiler dealership. Their truck needed service, and Helen needed a vehicle during the day to go to a doctor's appointment. The dealership did not have a "loaner" vehicle readily available, so Wallace loaned Helen his Escalade demonstrator. There is conflicting evidence as to whether she did or did not sign a document in connection with her use of the Escalade. The evidence most favorable to defendants is that Wallace had Helen sign a blank loaner agreement form before she left and that Wallace filled in the specific information about their personal insurance coverage after she left. Wallace Richardson Dep. 14 (filled out in his office after Helen left); cf. *id.* at 34 (filled out two or three days later, but before he knew about accident); see Chambers Dep. Ex. 2 (form assuring Tutwiler that Helen Richardson had her own insurance). Neither Wallace nor Helen Richardson specifically sought permission from a sales manager or from owner Mart Tutwiler for Helen Richardson to drive the Escalade.

Helen Richardson then left the dealership on March 8th.  There was an accident near Methodist Hospital in Indianapolis between a vehicle driven by Joseph Byers and a vehicle driven by Sonia Webster.  The Byers sued Webster in state court.  Helen Richardson was not involved in any direct collision, but in their second amended complaint, the Byers alleged that the accident was caused at least in part by an illegal u-turn by Helen Richardson driving the Tutwiler Escalade.  Universal Underwriters now seeks a declaratory judgment to the effect that Helen Richardson was not an insured under the policy for Tutwiler Cadillac.[1]

Under the terms of the Universal Underwriters policy for Tutwiler, the decisive issue in this case is whether Helen Richardson had permission from Tutwiler Cadillac to drive the Escalade.  If the court looked only at the formal writings that address the subject, the answer would be no.  Defendants have offered substantial evidence, however, that the actual practices at Tutwiler Cadillac did not conform to the written documents and policies.

Wallace Richardson had worked for Tutwiler for about eleven years at the time of the accident.  Wallace Richardson Dep. 5.  He was the business manager and reported directly to Mart Tutwiler, the owner of the business.  Wallace did not report to the sales manager.  Viewing the evidence in the light reasonably most favorable to the defendants, Wallace often picked up a customer's vehicle that

---

[1] The record in this case does not indicate the status of the state court lawsuit or whether the Richardsons' personal liability insurance carrier has stepped in to defend and/or indemnify.

needed servicing, loaned the customer his demonstrator, drove the customer's vehicle to the dealership for service, and drove it back to the customer, who had driven the loaned demonstrator vehicle in the meantime. Wallace testified that he had done this hundreds of time without documentation and without seeking permission from the sales manager, Mart Tutwiler, or anyone else, that it was almost a daily event, and that he did so to keep customers happy with good service. Wallace Richardson Dep. 18-22, 30-31.

Wallace also testified that both Tutwiler and sales manager Mac Chambers had told him that he had the authority to lend out any vehicle. Wallace Richardson Dep. 15-17. He was supposed to make sure there was a signed insurance agreement to make sure that the driver had his or her own insurance, but in practice, this policy was not always followed. *Id.* at 34. Wallace also testified that the dealership would regularly lend vehicles to customers of the service department and that other employees did not ask permission from Mart Tutwiler or Mac Chambers to do so. *Id.* at 26-27, 30-31. After the accident in this case, Tutwiler Cadillac did not discipline or even criticize Wallace Richardson in any way for allowing his wife to use the Escalade on loan.

Viewing all of this evidence in the light reasonably most favorable to defendants, a jury could reasonably find that Wallace Richardson had ample permission from Tutwiler Cadillac to lend the Escalade to his wife. A jury could

base this finding on actual daily practices rather than the terms of the 1993 Demonstrator Agreement tucked away in a file drawer.

In general, Indiana follows the "liberal rule" toward permissive use of a vehicle, so that the driver with permission continues as a permittee even if she is not using the vehicle for the purpose originally contemplated. See *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. App. 2006), citing *Arnold v. State Farm Mutual Auto. Ins. Co.*, 260 F.2d 161 (7th Cir. 1958), and *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.*, 686 N.E.2d 102, 106-07 (Ind. 1997); accord, *Vanliner Ins. Co. v. Sampat*, 320 F.3d 709, 713 (7th Cir. 2003) (applying Indiana law). If the insured policyholder imposes express limits on the scope of the permitted use, the courts will honor those limits. See *Briles*, 858 N.E.2d at 213-14, citing *Warner Trucking*, 686 N.E.2d at 107, and other cases. Universal Underwriters builds its motion for summary judgment on this principle, plus the evidence of the terms of Tutwiler Cadillac Demonstrator Agreement and the evidence that neither Wallace nor Helen Richardson obtained permission from Mac Chambers or Mart Tutwiler for Helen to drive the Escalade on March 8, 2004.

Indiana courts have made clear, however, that the scope of permission is not necessarily defined by an employer's formal stated policies. The Indiana Court of Appeals explained in *Briles*: "even when an employer maintains a company policy which prohibits the use of company vehicles for certain reasons, coverage will apply under an omnibus clause where the employer acquiesces in an

-6-

employee's violation of company policy by relaxing those prohibitions." 858 N.E.2d at 214-15, citing *Manor v. Statesman Ins. Co.*, 612 N.E.2d 1109, 1113 (Ind. App. 1993), citing in turn *Hartford Insurance Co. v. Vernon Fire & Casualty Insurance Co.*, 485 N.E.2d 902, 906 (Ind. App. 1985) (applying liberal rule on permissive use where employer did not object to employee taking vehicle to company golf outing, observed employee consuming alcohol at outing, and saw employee leave outing in company truck). Under these authorities, the defendants here have offered ample evidence to allow a reasonable jury to find that Tutwiler Cadillac had actually relaxed the terms of the Demonstrator Agreement and that Wallace Richardson had Tutwiler's permission to allow Helen to drive the Escalade on March 8, 2004.

Defendants also argue that Wallace Richardson had "inherent agency power" to loan a Tutwiler vehicle to Helen Richardson while the dealership serviced her personal vehicle. The concept of inherent agency power appeared in the Restatement (Second) of Agency § 8A as a kind of gap-filler remedy for third parties injured by a principal's agent who was "faulty" in "performing his master's business" or who "acted improperly in entering into contracts or making conveyances." § 8A cmts. a-b (1958). The Supreme Court of Indiana recognized this theory of agency liability in answering a certified question about an attorney's authority to bind a client to a settlement agreement without the client's consent. See *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1304 (Ind. 1998) ("if one of two innocent parties must suffer . . . – either the principal or the third party – the loss

should fall on the party who is most at fault. Because the principal puts the agent in a position of trust, the principal should bear the loss."). The court applied this theory in *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1212 (Ind. 2000), to find that a company's president had inherent authority to bind the company to a contract to sell real estate even though the board of directors had not approved the contract.

In 2006, several years after the Supreme Court of Indiana decided *Koval* and *Menard*, the American Law Institute released the Restatement (Third) of Agency, which eliminated inherent agency power as a separate theory of agency liability. One of "the major motivations for abolishing inherent authority, as scholars have recognized, is that the courts have had difficulty ascertaining the conceptual boundary between apparent authority and inherent authority." Gregory Scott Crespi, *The Proposed Abolition of Inherent Agency Authority by the Restatement (Third) of Agency: An Incomplete Solution*, 45 Santa Clara L. Rev. 337, 340 (2005). The Restatement (Third) noted that other doctrines – including apparent authority, estoppel, and restitution – effectively encompass the justifications underpinning inherent agency. See Restatement (Third) of Agency § 2.01 cmt. b (2006).

The court need not predict at this point whether the Supreme Court of Indiana would continue to recognize the inherent agency power doctrine after this change in the Restatement (Third). The evidence that Tutwiler routinely allowed Wallace Richardson to lend the dealership's cars to customers would allow a

-8-

reasonable jury to find that he had actual authority to lend Helen Richardson a Tutwiler vehicle while the dealership serviced the Richardsons' truck. See *id.* (recognizing that actual authority encompasses actions "which an agent believes the principal wishes the agent to [take] based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent"). No gap-filler remedy of "inherent authority" is needed to resolve the motion for summary judgment, though the issue might arise at trial.

Accordingly, Universal Underwriters' motion for summary judgment (Docket No. 27) is denied. The court declines defendants' invitations to grant them summary judgment. They did not file their own motion, and a jury could also reasonably find that Helen Richardson did not have permission to drive the Tutwiler vehicle, at least if the conflicting evidence is viewed in the light most favorable to Universal Underwriters. The court will hold a scheduling conference in the near future to set a trial date.

So ordered.

Date: May 1, 2008

*David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Bobby J. Avery-Seagrave
ZEIGLER COHEN & KOCH
bseagrave@zcklaw.com

Larry L. Barnard
CARSON BOXBERGER
barnard@carsonboxberger.com

James P. Buchholz
CARSON BOXBERGER LLP
jpb@carsonboxberger.com

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com

Thomas Frederick Macke
BLACHLY TABOR BOZIK AND HARTMAN
tfmacke@btbhlaw.com

Bradley J Schulz
GOODIN ABERNATHY LLP
bschulz@gamlawyers.com

Tracey S. Wetzstein
BLACHLY TABOR BOZIK & HARTMAN LLC
tsw@lawyersonthesquare.com